J-S11014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :        PENNSYLVANIA
                                         :
              v.                       :
                                         :
                                         :
STANLEY K. BROWN               :
                                         :
             Appellant             :      No. 769 WDA 2024

Appeal from the Judgment of Sentence Entered May 29, 2024
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000743-2023

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:            **FILED:  June 16, 2025**

Stanley K. Brown (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of aggravated assault, simple assault, and harassment; and three counts of recklessly endangering another person.[1]  Additionally, Appellant's counsel (Counsel) has filed a motion to withdraw as counsel and accompanying brief in accordance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We grant Counsel's motion to withdraw and affirm the judgment of sentence.

This case arises from a domestic dispute that occurred on May 23, 2023, between Appellant and Brittany Norcross (Ms. Norcross), at 411 Cedar

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 2709(a)(1), 2705.

Avenue, Mercer, Pennsylvania (the residence or Ms. Norcross's residence). On May 24, 2023, the Commonwealth filed a criminal complaint alleging that, after Ms. Norcross refused to allow Appellant to use her vehicle, Appellant produced a firearm and fired at Ms. Norcross, narrowly missing her. Affidavit of Probable Cause, 5/24/23, at 1. The Commonwealth further alleged that Ms. Norcross's cousin, Ashlynn Colwell (Ashlynn), and Ashlynn's mother, Marion Colwell (Marion), were present the night of the incident, and were placed in danger of death or serious bodily injury by Appellant's gunshot. *Id.* On August 18, 2023, the Commonwealth filed a criminal information charging Appellant with the above-referenced offenses, in addition to one count of discharging a firearm into an occupied structure.[2]

The matter proceeded to a jury trial on March 18, 2024, where Appellant was represented by Counsel.[3] The Commonwealth first called Ashlynn to testify. Ashlynn testified that on the evening of May 23, 2023, following her release from the Erie County Jail,[4] she went to Ms. Norcross's residence with Marion. *See* N.T., 3/18/24, at 28. Ashlynn testified that she arrived at Ms.

---

[2] 18 Pa.C.S.A. § 2707.1(a). The trial court granted the Commonwealth's request to *nolle pros* the charge of discharging a firearm into an occupied structure on March 11, 2024.

[3] Appellant did not file an omnibus pretrial motion or any motions *in limine* in advance of trial.

[4] Ashlynn did not testify as to the basis for her incarceration in the Erie County Jail.

Norcross's residence at approximately 1:00 a.m., where she stayed for "a couple of hours." *Id.* According to Ashlynn, when she arrived at the residence, also present were Marion, Ms. Norcross, and two unidentified individuals (a male and female). *Id.* at 17. Ashlynn stated that Appellant was not present at the residence. *Id.* Ashlynn testified that she fell asleep for a period of time before going to her grandmother's house, which is located across the street from the residence. *See id.* Ashlynn testified she remained at her grandmother's house for "a couple of hours" before returning to the residence to take Ms. Norcross's minor son to school. *Id.* at 29.

Ashlynn explained that, later that day, she returned to the residence to try to persuade Marion to take her home. *Id.* At that time, Ashlynn testified, she brought Ms. Norcross's minor daughter to Ashlynn's grandmother's house, because Ms. Norcross was screaming and highly intoxicated. *Id.* at 30. Ashlynn testified that, at approximately 3:30 or 4:00 p.m., Ms. Norcross was "breaking the car windows out of [a] white vehicle parked in the driveway[. Ms. Norcross] was outside yelling and screaming, being very rude." *Id.* at 31. Ashlynn testified that shortly after Ms. Norcross's outburst, Ashlynn returned to the residence, after which she heard gunfire. *Id.* at 33. Ashlynn explained that she did not see a firearm or witness the shooting, but recalled seeing a man with dreadlocks, whom she believed was named "Brown." *Id.* Ashlynn testified that the man with dreadlocks did not resemble Appellant. *Id.*; *see*

- 3 -

*also id.* at 20 (Ashlynn testifying that she did not see Appellant at any point when she was at the residence).

Concerning her association with Appellant, Ms. Norcross testified that, for an unspecified period of time, Appellant had been spending approximately two nights a week at her residence. N.T. (Jury Trial – Day Two), 3/19/24,[5] at 6. Ms. Norcross described her relationship with Appellant as "[f]riends with benefits." *Id.* at 7. Ms. Norcross confirmed that, on May 23, 2023, she and Appellant had a disagreement, but she could not recall the nature of the dispute, because she "was drunk and high." *Id.* Ms. Norcross stated that she did not remember whether 1) Appellant had a firearm the day of the shooting; 2) she had ever seen Appellant with a firearm in the past; or 3) a firearm had been discharged at the residence on May 23, 2023. *Id.* at 8.

Ms. Norcross testified that earlier on the date of the incident, she consumed alcohol with Marion's stepfather, Randy Gillespie. *Id.* at 17. Ms. Norcross claimed that a friend of Appellant's, an unidentified man she believed might have been named "Browns or Briggs," was detailing her car. *Id.* at 17, 18, 32. Ms. Norcross testified that this unidentified man wanted to move her car, and she responded, "my car is not being moved [] by anybody." *Id.* at 17. At some point during this dispute over her vehicle, Ms. Norcross testified

---

[5] The transcript for the second day of Appellant's jury trial erroneously indicates that it occurred on March 18, 2024. However, the docket and the transcript for the first day of testimony confirms Appellant's trial began on March 18, 2024, and concluded on March 19, 2024.

that Appellant took her keys and locked her in her car, "because I was drunk and belligerent." *Id.* at 19. Ms. Norcross indicated that she then exited the vehicle and instigated a physical altercation with Appellant. *Id.*; *see also id.* at 39 (Ms. Norcross testifying, "I got physically aggressive[,] and I was slapping [Appellant], hitting him in the face and stuff. And that's when he pushed me up against the car and that's when my neck [be]came involved."); *id.* (Ms. Norcross clarifying that Appellant placed his hand on her neck in order to defend himself). After this altercation, Ms. Norcross claimed Appellant left, and that she did not see him thereafter. *Id.* at 20.[6]

The prosecutor showed Ms. Norcross Commonwealth's Exhibit 11 (Exhibit 11), which, Ms. Norcross confirmed, was the handwritten, signed statement she provided to the Sharon Police Department. *Id.* at 12-13. Counsel objected to Exhibit 11 as hearsay. *Id.* at 13. The trial court overruled Counsel's objection, noting that the testimony established that Ms. Norcross was the declarant of the written statement. *Id.* The prosecutor then moved for the admission of Exhibit 11, and Counsel stated, "I am okay with that." *Id.* at 14.[7]

_____

[6] Ms. Norcross reiterated that she was "not sure" whether she saw a gun or heard any gunshots on the date of the incident. N.T., 3/19/24, at 20.

[7] Although entered into evidence at trial, the certified record does not contain Exhibit 11. Upon an informal inquiry by our Prothonotary, the Mercer County Clerk of Courts indicated that Exhibit 11 was not filed in her office. As a result, we glean the contents of Exhibit 11 from the trial notes of testimony.

- 5 -

Ms. Norcross agreed that Exhibit 11 contained the following statements: 1) "I was drinking, he was drinking"; 2) "[h]e hit my beer out of my hands"; 3) "he went into the house by the time I got to the front screen door and opened it"; 4) "he was standing at the top of the steps"; and 5) "he just shot at me. The gun went off, almost hitting me." *Id.* at 14, 15, 17, 18. While Ms. Norcross confirmed that Appellant hit her beer out of her hand, ***see id.*** at 18, at various points in her testimony, Ms. Norcross claimed not to recall who "he" was, or claimed that "he" did not refer to Appellant, in contradiction to the statements she memorialized in Exhibit 11. *Id.*

Sharon Police Officer Conner Biggs (Officer Biggs) testified that, though he could smell alcohol on Ms. Norcross, "she didn't show any signs of severe intoxication or inebriation, such as slurred speech, slowed motor functions, ab[ility] to maintain her balance, anything like that[,]" and that she was able to "carry on a normal conversation …." *Id.* at 43. Officer Biggs confirmed that he obtained Exhibit 11 from Ms. Norcross, and that he observed her complete the written statement. *Id.* at 44.

> Officer Biggs testified that Ms. Norcross
>
> told me that [Appellant] wanted to use [her] car[,] and she did not want him to use the car anymore. [Ms. Norcross] told me that [she and Appellant] got into an argument because he wanted to take the car and that she would not let him. So [Ms. Norcross] grabbed a cinder block and smashed the window so [Appellant] could not see out of the car when he was driving so he could not use [the car].

*Id.* at 45. According to Officer Biggs, Ms. Norcross advised him that when she entered the residence, Appellant was standing at the top of the stairs and shot at her. *Id.* at 46. Officer Biggs then authenticated photographs, admitted into evidence without objection as Commonwealth's Exhibits 1 through 10 (the photographs), depicting the interior of the residence and "fresh" holes in a jacket and wall that, he opined, were caused by gunshots. *Id.* at 48-54. Officer Biggs further opined that the gunshots came from the top of the stairs facing the residence's entryway, corroborating Ms. Norcross's statement in Exhibit 11. *Id.* at 54.

Finally, the Commonwealth called Sharon Police Corporal Anthony Martwinski (Corporal Martwinski), who also authenticated the photographs, and offered an opinion concerning the trajectory of the gunshots that was consistent with Officer Biggs's opinion.[8] *Id.* at 63-72; *see also id.* at 72 (Corporal Martwinski agreeing that the trajectory of the bullet holes "corroborated the story that [Ms. Norcross]" gave to police).

Appellant presented no witnesses.

After the close of evidence and closing arguments, the jury began its deliberations.[9] During its deliberation, the jury submitted the following

---

[8] Neither Officer Biggs nor Corporal Martwinski were offered as experts in ballistics. Appellant did not object to their testimony.

[9] Pertinently, the trial court charged the jury as follows concerning Exhibit 11:

*(Footnote Continued Next Page)*

question to the trial court: "Could we see the statement that [Ms.] Norcross gave to the police on the night of the incident, please?" N.T., 3/19/24, at 124. After a brief conference with the parties, the trial court permitted the jury to take Exhibit 11 into the jury room. *Id.* at 123-24. Appellant did not object.

The jury subsequently convicted Appellant of the above-described charges, and Appellant filed a timely notice of appeal. On September 16, 2024, this Court dismissed Appellant's appeal for failure to file a docketing statement, as required by Pa.R.A.P. 3517. That same date, Appellant filed a docketing statement, and, on September 18, 2024, Appellant filed an application requesting reinstatement of his appeal. We reinstated Appellant's appeal on September 20, 2024. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court filed a Rule 1925(a) opinion.

On December 29, 2024, Counsel filed in this Court an *Anders* brief and motion to withdraw as counsel. Appellant did not file a response.[10]

---

Impeachment or substantive evidence, inconsistent statement. You have heard evidence that a witness, [Ms.] Norcross, made a statement on an earlier occasion that was inconsistent with her present testimony. You may, if you choose, regard this evidence as proof of the truth of anything that [Ms. Norcross] said in the earlier statement.

N.T., 3/19/24, at 109; *see also* Pa. SSJI (Crim), § 4.08A.

[10] Upon his motion, we extended Appellant's deadline to file a brief to May 16, 2025. Appellant did not file a brief within the time granted.

We first address Counsel's motion to withdraw. *See Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) ("When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). Before being permitted to withdraw, counsel must satisfy the following procedural requirements:

> Counsel must: 1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)).

Here, Counsel states that "[a]fter [conducting] a thorough review of the record," he "has concluded that the issues raised by Appellant are wholly frivolous." *Anders* Brief at 5. Counsel attached to his motion to withdraw a copy of a letter he sent to Appellant, in which Counsel advised Appellant that he could retain private counsel or proceed *pro se* to "raise any additional points you deem worth of the Court's attention …." *Id.*, attach. Counsel also

provided Appellant with a copy of the **Anders** brief. **Id.** Thus, Counsel has satisfied the procedural requirements for withdrawal.[11]

With respect to the substantive requirements,

> in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Cartrette**, 83 A.3d at 1032 (citing **Santiago**, 978 A.2d at 361)). If counsel has satisfied the above requirements, it is then this Court's duty to review the trial court proceedings to determine whether there are any other non-frivolous issues that the appellant could raise on appeal. **See Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) ("part and parcel of **Anders** is our Court's duty to review the record to [e]nsure no issues of arguable merit have been missed or misstated.").

---

[11] We note that Counsel has failed to append to his brief a copy of Appellant's Rule 1925(b) concise statement. **See** Pa.R.A.P. 2111(d) ("[T]here **shall** be appended to the brief of the appellant a copy of the statement of errors complained of on appeal[.]" (emphasis added)). Nevertheless, Counsel's Rule 2111(d) violation does not impede our review, and we conclude that Counsel has substantially complied with the requirements of **Anders**/**Santiago**. **See Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa. Super. 2015) ("Substantial compliance with [the **Anders**/**Santiago**] requirements is sufficient." (citation omitted)).

- 10 -

Here, Counsel's **Anders** brief details the history of the case, identifies facts that could arguably support Appellant's appeal, and includes Counsel's reasons for concluding that the appeal lacks merit and is frivolous. **See Anders** Brief at 7-19. Upon review, Counsel has complied with the substantive requirements of **Anders** and **Santiago**. Thus, we consider Appellant's issues presented in Counsel's **Anders** brief.

Counsel raises the following three issues on Appellant's behalf:

I. Did the trial court err in allowing a prior inconsistent statement made by a non-party witness to be entered into evidence?

II. Did the trial court err in allowing the prior inconsistent statement to be used to contradict the testimony given by the non-party witness?

III. Did the trial court err in allowing the present[ation] of the prior inconsistent statement to the jury when the jury had asked to see its contents during deliberations?

**Anders** Brief at 6 (capitalization modified).

Initially, we observe that Appellant 1) acquiesced to the admission of Exhibit 11, **see** N.T., 3/19/24, at 14; 2) did not object to any question posed to Ms. Norcross; and 3) did not object to the trial court permitting the jury to take Exhibit 11 into the jury room. Accordingly, Appellant has waived each of his issues. **See Commonwealth v. Rudolf**, 262 A.3d 574, 581 (Pa. Super. 2021) ("[A]n appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal."). Even if preserved, however, these issues would not entitle Appellant to relief.

- 11 -

We consider together Appellant's first two issues, which challenge the admission and use of Exhibit 11 as hearsay. Appellant argues that the trial court erred by admitting Exhibit 11 as substantive evidence and permitting the jury to consider its contents for their truth. *See Anders* Brief at 15, 16.

Our standard of review of challenges to the admissibility of evidence is well settled:

> [The] admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Wilson*, 286 A.3d 1288, 1295 (Pa. Super. 2022) (quoting *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012)).

The Pennsylvania Rules of Evidence define hearsay as a "statement that … the declarant does not make while testifying at the current trial or hearing" that the proponent "offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); Pa.R.E. 802 (rule against hearsay).

Rule 803.1(1) excepts from the rule against hearsay "[a] prior statement by a declarant-witness that is inconsistent with the declarant-

witness's testimony and … is a writing signed and adopted by the declarant[.]" Pa.R.E. 803.1(1)(B).

Further, Rule 803.1(4) excepts from the rule against hearsay "[a] prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement, unless the court finds the claimed inability to remember to be credible, and the statement … is a writing signed and adopted by the declarant[.]" Pa.R.E. 803.1(4)(B). "The purpose of [Rule 803.1(4)] is to protect against the 'turncoat witness' who once provided a statement, but now seeks to deprive the use of this evidence at trial." *Commonwealth v. Williamson*, 330 A.3d 407, 415 (Pa. Super. 2025) (quoting Pa.R.E. 803.1(4), Cmt.).

We have explained that

a prior inconsistent statement may be offered not only to impeach a witness, [*see* Pa.R.E. 613,] **but also as substantive evidence if it meets additional requirements of reliability**. [*See* Pa.R.E. 803.1.] The test is a two-part inquiry: 1) whether the statement is given under reliable circumstances; and 2) whether the declarant is available for cross-examination. With respect to the first prong, that the statement is given under reliable circumstances, **our Supreme Court has deemed reliable only certain statements; among them is a statement that is reduced to a writing and signed and adopted by the witness**. [*See Commonwealth v. Lively*, 610 A.2d 7, 9-10 (Pa. 1992); *see also* Pa.R.E. 803.1(1).] With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test.

*Commonwealth v. Enix*, 192 A.3d 78, 81 (Pa. Super. 2018) (some citations, brackets, quotation marks, and paragraph break omitted; emphasis added).

Instantly, in its Rule 1925(a) opinion, the trial court cites Rule 803.1(1)(B) in rejecting Appellant's first two issues:

> Ms. Norcross testified [that] she signed her written statement and adopted it when she answered "Yes" to the Commonwealth's question: "And is it not true that you gave a two-page handwritten statement … to [law enforcement?]"  Furthermore, her prior written statement was inconsistent with her testimony at trial. Therefore, [Rule 803.1(1)(B)] allowed for her written statement to be entered into evidence.

Trial Court Opinion, 12/30/24, at 2 (record citation omitted).

Upon review, we agree with the trial court, and discern no abuse of the court's discretion in admitting Exhibit 11 as substantive evidence and permitting the Commonwealth to use Exhibit 11 to question Ms. Norcross. **See Wilson**, 286 A.3d at 1295.  As observed by the trial court, Ms. Norcross's testimony was at times inconsistent with Exhibit 11, and Ms. Norcross specifically admitted that she wrote and signed Exhibit 11.  **See** N.T., 3/19/24, at 12-13; **see also** Pa.R.E. 803.1(1).  Further, Counsel cross-examined Ms. Norcross concerning the contents of Exhibit 11.  **See** N.T., 3/19/24, at 30-33.  Under these circumstances, Ms. Norcross's prior inconsistent statement satisfied the reliability requirements necessary to permit the Commonwealth to offer Exhibit 11 as substantive evidence.  **See Enix**, 192 A.3d at 81.[12]

---

[12] Additionally, Ms. Norcross repeatedly claimed not to remember the subject matter of Exhibit 11, thus satisfying the requirements of Rule 803.1(4).  **See** Pa.R.E. 803.1(4).

- 14 -

Accordingly, the trial court properly admitted Exhibit 11 as substantive evidence and, if preserved, Appellant's first two issues would merit no relief.

In his final issue, Appellant argues the trial court "erred in allowing the [] jury to obtain [Exhibit 11] during deliberations …." **Anders** Brief at 18.

Our standard of review is well settled: "[W]hether an exhibit should be allowed to go out with the jury during deliberations is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." **Commonwealth v. Manley**, 985 A.2d 256, 273 (Pa. Super. 2009) (citations omitted); **see also Commonwealth v. Barnett**, 50 A.3d 176, 194 (Pa. Super. 2012) ("Our courts have rarely found that materials given to juries during deliberations constitute reversible error.").

Pennsylvania Rule of Criminal Procedure 646 (Material Permitted in Possession of the Jury) provides, in relevant part, as follows:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> * * *
>
> (C) During deliberations, the jury shall not be permitted to have:
>
>> (1) a transcript of the trial testimony;
>>
>> (2) a copy of any written or otherwise recorded confession by the defendant;
>>
>> (3) a copy of the information or indictment; and
>>
>> (4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(A), (C).

- 15 -

While a witness statement entered solely for impeachment purposes may not be provided to the jury during deliberations, witness statements entered as substantive evidence may be taken back to the jury room when requested. *See Commonwealth v. Russell*, 322 A.2d 127, 131 (Pa. 1974) (concluding the trial court erred in permitting a witness statement, entered solely for impeachment purposes, to be taken back to the jury room, "where the testimony of guilt was highly conflicting [and] could prejudice the defendant unduly."); *Commonwealth v. Parker*, 104 A.3d 17, 26 (Pa. Super. 2014) (distinguishing *Russell*, *supra*, where the witness statement was entered as substantive evidence, and noting, "[t]he jury's request for the statement showed that it was weighing whether to believe [the witness's] testimony at trial or his prior inconsistent testimony.").

We have explained that

[t]he underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

*Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa. Super. 2005); *see also Barnett*, 50 A.3d at 196 (concluding the trial court did not abuse its discretion in permitting the jury to have during deliberations a minor victim's written statement, where "[t]he statement was relevant evidence, it was

specifically requested by the jury, and when originally admitted into evidence, [the a]ppellant failed to assert an objection.").

Upon review, we discern no abuse of discretion in the trial court's permitting the jury to take Exhibit 11 into the jury room for deliberations. *See Manley*, 985 A.2d at 273. As we have concluded above, the trial court did not abuse its discretion by admitting Exhibit 11 as substantive evidence. Exhibit 11 was clearly relevant evidence, and it was requested by the jury. *See Barnett*, 50 A.3d at 196; *Parker*, 104 A.3d at 26. Further, we cannot discern how Appellant could have been prejudiced by the jury being permitted to view Ms. Norcross's statement *in toto*, as opposed to in the question-and-answer format in which it was presented during the taking of testimony. Accordingly, Appellant's third issue, if preserved, would entitle him to no relief.

As our independent review of the record reveals no issues of arguable merit that Appellant could raise, we grant Counsel's motion to withdraw and affirm Appellant's judgment of sentence.

Motion to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

**DATE:** **6/16/2025**