J-S31009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY OUTLAW :
:
Appellant : No. 2950 EDA 2023

Appeal from the Judgment of Sentence Entered November 18, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001111-2021

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY OUTLAW :
:
Appellant : No. 2951 EDA 2023

Appeal from the Judgment of Sentence Entered November 18, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001112-2021

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BOWES, J.: **FILED OCTOBER 10, 2024**

Anthony Outlaw appeals from the judgment of sentence of eleven and one-half to twenty-three months of incarceration, followed by four years of probation, imposed after being convicted of various sexual offenses for acts

perpetrated against his two minor daughters, A.Z.O., born in October 2015, and A.N.O., born in December 2016.[1]  We affirm.

Amid ongoing custody disputes, Alicia Spencer, the victims' mother, reported multiple times to authorities that she believed Appellant had been sexually abusing the girls for years.  Ultimately, Appellant was charged by separate criminal information as to each victim, which the court consolidated. Prior to trial, the Commonwealth filed a motion to admit testimony pursuant to the tender years exception to the general rule against hearsay, 42 Pa.C.S. § 5985.1(a).  On June 29, 2022, the court held a hearing on the motion.  After considering testimony from Ms. Spencer and her mother, Emily Liles, the court granted the motion to permit them to testify about statements made by the victims regarding the alleged abuse, and to admit the hearsay statements as substantive evidence.

Appellant immediately proceeded to a bench trial, which incorporated the testimony from the motion hearing.  A.Z.O., then six years old, was determined to be competent and testified that Appellant touched her "behind" and vagina with his hands.  **See** N.T. Trial, 6/29/22, at 85-86.  The court also viewed A.Z.O.'s forensic interview with the Philadelphia Children's Alliance ("PCA").

_____

[1] Different abbreviations have been utilized throughout these proceedings to identify the victims.  For ease of reference in this memorandum, we adopt the initials used by the trial court.

- 2 -

A.N.O., who was five years old at the time of trial, struggled to verbally respond to questions during the competency questioning. *Id*. at 102-10. Uncertain whether it was due to age or setting, the court deferred ruling on her competency until after it had the opportunity to observe her testify. On direct examination, A.N.O. still had trouble audibly answering. After confirming that she was uncomfortable with the number of people, the court temporarily cleared the courtroom. *Id*. at 120-21. Appellant remained in the courtroom with his attorney. A.N.O. continued to answer nonverbally or not respond at all, indicated that she was scared to look around the courtroom, and did not identify her father or admit to remembering him or ever living with him. *Id*. at 122-30. Unsure about her competency and given her inability to answer questions, the court struck A.N.O.'s testimony and, therefore, the Commonwealth did not seek to admit her PCA interview. *Id*. at 131-34.

The Commonwealth presented evidence regarding the reporting of the abuse and then the matter was continued to August 19, 2022, at which time Appellant testified in his defense. Additionally, the parties stipulated that if members of the community testified, they would state that Appellant had a reputation for being peaceful and non-violent.

The trial court adjudged Appellant guilty of one count each of unlawful contact with a minor, endangering the welfare of children, corruption of minors, and indecent exposure as to each child, but acquitted him of the more serious penetrative offenses, such as rape of a child. After considering a pre-

sentence investigation report, the court sentenced Appellant as indicated hereinabove. No post-sentence motions were filed.

Appellant timely appealed to this Court.[2] He submitted a Pa.R.A.P. 1925(b) statement and the trial court authored a responsive Rule 1925(a) opinion. Appellant raises three issues for our consideration:

1. Did the trial court abuse its discretion in granting a tender years motion and basing Appellant's convictions primarily thereon because the reporters, Emily Liles and Alicia Spencer, were, *inter alia*, biased, non-credible, and suffered from mental health issues, complainants contradicted the alleged reporting, and even the trial court did not believe the relayed reporting issues regarding penetration and, as a consequence, the hearsay reporting was particularly unreliable and does not provide the basis for an adjudication of guilt beyond a reasonable doubt?

2. Was there insufficient evidence as a matter of law to sustain Appellant's convictions for unlawful contact with a minor, endangering the welfare of a child, corruption of the morals of a minor, and indecent exposure as to both complainants and were the convictions based upon surmise and conjecture especially in relation to complainant A[.N.]O. because the trial court struck this complainant's testimony and complainant A[.Z.].O.'s testimony was wholly inconsistent and improperly influenced by the tender years reporters and what was reported could, absent inappropriate influence, occur in non-criminal circumstances where the *mens rea* for the conviction is absent?

3. Did the trial court err and deny Appellant his constitutional right to a public trial by clearing the courtroom, determining that there was no right to a public trial, and not considering less restrictive alternatives to clearing the courtroom?

Appellant's brief at 4-5 (cleaned up).

_____

[2] Appellant's initial appeal was dismissed for failure to file a brief. The instant appeal followed the granting of relief through a Post Conviction Relief Act petition to reinstate his direct appeal rights *nunc pro tunc*.

We review a challenge to the court's admission of evidence pursuant to tender years exception for an abuse of discretion. ***See Commonwealth v. Copenhaver***, 316 A.3d 1020, 1023 (Pa.Super. 2024). The exception is set forth in § 5985.1, which provides in pertinent part as follows:

**(a) General rule.--**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (ii) the child either:

> > (A) testifies at the proceeding; or

> > (B) is unavailable as a witness.

(2) The following offenses under 18 Pa.C.S. (relating to crimes and offenses) shall apply to paragraph (1):

> . . . .

> Chapter 31 (relating to sexual offenses).

> . . . .

> Section 4304 (relating to endangering welfare of children), if the offense involved sexual contact with the victim.

> Section 6301(a)(1)(ii) (relating to corruption of minors).

> > . . . .

- 5 -

Section 6318 (relating to unlawful contact with minor). 42 Pa.C.S. § 5985.1. Additionally, we note that "[t]he tender years statute creates an exception to the hearsay rule in recognition of the fragile nature of young victims of sexual abuse." ***Commonwealth v. Curley***, 910 A.2d 692, 697 (Pa.Super. 2006) (cleaned up).

Appellant only argues that the court erred in admitting the hearsay statements because they were "tainted and unreliable."[3] Appellant's brief at 12. He insists that the court must have rejected the girls' statements in part because it acquitted him of the more serious sexual offenses, and therefore the statements could not be considered reliable. ***Id***. at 12. Appellant cites no authority to support this proposition.

This Court has explained that reliability may be demonstrated by "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age[,] and the lack of a motive to fabricate." ***Commonwealth v. Kriner***, 915 A.2d 653, 657 n.3 (Pa.Super. 2007) (*en banc*) (cleaned up). Moreover, the trial court must consider the totality of the circumstances in assessing the trustworthiness of a proffered statement. ***See Interest of D.C.***, 263 A.3d 326, 335 (Pa.Super. 2021).

_____

[3] We note that the sexual offenses of which the girls accused Appellant are among those enumerated in § 5985.1(a)(2). Similarly, § 5985.1(a)(1)(ii) clearly applies to the hearsay statements of A.Z.O. as she is a child victim under the age of sixteen who testified at trial, as well as to the hearsay statements of A.N.O. because she is a child victim, also under the age of sixteen, and was determined to be unavailable as a witness at trial.

In its Rule 1925(a) opinion, the trial court provided the following explanation regarding its finding that the hearsay statements were reliable:

> Although Ms. Spencer and Ms. Liles may have possessed bias against [Appellant], the girls' hearsay statements were themselves spontaneous, made in the immediate aftermath of – and so bolstered by – Ms. Spencer discovering A.Z.O. and A.N.O. acting in sexually inappropriate ways with their young, male cousins. That behavior, unexpected of children their age, along with the girls' child-like terminology, "kissing game," and their subsequent and consistent demonstrations on the teddy bear as to where [Appellant] touched them, together, were sufficient to demonstrate the reliability of the hearsay statements.

Trial Court Opinion, 3/19/24, at 4-5 (citations omitted).

Upon review, we determine that the court engaged in a proper analysis as to the application of the tender years hearsay exception. *See Kriner*, 915 A.2d at 657 n.3 (considering whether the statements were made spontaneously, repeated consistently, and included phrases atypical for children of that age, as well as the child's demeanor and whether the child had a motive to lie). The court properly weighed the bias of the individuals relaying the statements, but the record bears out the court's findings regarding the spontaneity of the statements from the girls, the consistency in retelling, the unexpected terminology, and the lack of a motive to lie. We discern no abuse of discretion in deeming the statements sufficiently reliable under the totality of the circumstances. Accordingly, Appellant is not entitled to relief on this claim.

Appellant next purports to challenge the sufficiency of the evidence as to all eight of his convictions.[4] Although phrased as a complaint that his "convictions were based upon conjecture and surmise only[,]" his argument attacks the credibility determinations made by the court in deciding to weigh the testimony of Ms. Spencer, Ms. Liles, and A.Z.O. over that of Appellant, his stipulated character evidence, and the testimony that prior investigations against him had been dismissed. *See* Appellant's brief at 13-17. Such a challenge assails not the sufficiency, but the weight of the evidence. *See Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa.Super. 2018) ("An argument that the finder of fact should have credited one witness's testimony over that of another goes to the weight of the evidence, not the sufficiency of the evidence." (cleaned up)). Since Appellant failed to raise a weight claim before the trial court, this issue is waived. *See Commonwealth v. Cox*, 231

_____

[4] The trial court and the Commonwealth both urge us to find waiver based upon Appellant's failure to identify which elements of which crimes were not proven by sufficient evidence. *See* Trial Court Opinion, 3/19/24, at 7; Commonwealth's brief at 15. As explained in the body of this memorandum, Appellant's sufficiency claim is in fact a weight challenge. Therefore, we decline to find waiver on this basis. Were we to consider this as a sufficiency challenge, however, we would affirm on the basis of the trial court's well-reasoned opinion. *See* Trial Court Opinion, 3/19/24, at 7-10 (explaining how the elements for all eight convictions were satisfied by proof beyond a reasonable doubt); *see also Commonwealth v. Cox*, 231 A.3d 1011, 1017 (Pa.Super. 2020) ("We evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." (cleaned up)).

- 8 -

A.3d 1011, 1018 (Pa.Super. 2020) (finding weight claim waived on appeal where the defendant failed to preserve it either orally or in writing prior to sentencing, or after sentencing in a post-sentence motion).

Finally, Appellant argues that the trial court violated his constitutional rights by clearing the courtroom during a portion of A.N.O.'s testimony.[5] **See** Appellant's brief at 17. He avers that the court denied him of his right to a public trial by closing the courtroom and failed to consider less restrictive means. **Id**. at 18. Claiming that he thus "suffered structural error[,]" Appellant asks us to remand for a new trial. **Id**.

We review a court's decision to restrict access to a judicial proceeding for an abuse of discretion, with discretion being considered "abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Phillips**, 946 A.2d 103, 108–09 (Pa.Super. 2008) (cleaned up). A defendant has a right to a public trial pursuant to the constitutions of both the United States of America and the Commonwealth of Pennsylvania. **Id**. at 109. This right "ensures that the public may see [the accused] is fairly dealt with and not unjustly condemned, and that the

---

[5] We assume for purposes of this appeal that Appellant preserved this issue by virtue of the court's note that defense counsel objected. **See** N.T. Trial, 6/29/22, at 121 (court stating that "I know the defense attorney objects" before clearing courtroom).

presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Commonwealth v. Jordan*, 212 A.3d 91, 101 (Pa.Super. 2019) (cleaned up). Furthermore, such openness fosters confidence in the judicial processes. *Id*.

Several reasons justify closing a courtroom to the public.[6] Chief among them "are threats of violence to witnesses, and the embarrassment and discomfiture to victims of crimes which require the explication of lurid details." *Commonwealth v. Wright*, 388 A.2d 1084, 1086 (Pa.Super. 1978) (*en banc*) (cleaned up). We have adopted the parameters for closing a courtroom set forth by the Supreme Court of the United States thusly:

> [W]hile an accused has the right to a public trial, the right is not absolute. Closing a courtroom is permissible if the following requirements are met: (1) there is "an overriding interest that is likely to be prejudiced," (2) the closure is "no broader than necessary to protect that interest," (3) the trial court considers "reasonable alternatives" to closure, and (4) the trial court makes "findings adequate to support the closure."

*Jordan*, 212 A.3d at 101 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)).

---

[6] Although not applicable here, the High Court has also held that "[w]here trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review." *Commonwealth. v. Berrigan*, 501 A.2d 226, 234 (Pa. 1985) (footnote omitted).

In the matter *sub judice*, the court held a sidebar off the record and then confirmed that at least part of the reason for A.N.O.'s non-responsiveness was the number of people in the courtroom. *See* N.T. Trial, 6/29/22, at 120-21. As explained by the trial court, it decided to try to aid her ability to answer questions by closing the courtroom for the remainder of her testimony, with instructions that spectators could immediately return thereafter. *See* Trial Court Opinion, 3/19/24, at 10. Notably, at that juncture, the court was still attempting to ascertain A.N.O.'s competency, as well as facilitate her direct and cross examination. *See* N.T. Trial, 6/29/22, at 115-16. The record demonstrates that the court had an undisclosed number of people leave the courtroom for what amounted to eight pages of unfruitful direct examination, before terminating and striking her testimony. *Id*. at 122-30. Although it appears that at least one individual was asked to leave the courtroom, it is also apparent that some members of the public were permitted to remain, as evidenced by the following exchange:

> THE COURT: I am going to clear the courtroom for her testimony and you guys can come back in. I'm just trying to make this go as best as we can. And everybody can come back in. She wanted you guys (indicating) to stay. Everybody else and of course [Appellant] is staying. Obviously he has to stay. So, I don't know[.]
>
> GENTLEMAN IN THE GALLERY: We have no right to stay in court?
>
> THE COURT: Huh?
>
> GENTLEMAN IN THE GALLERY: We don't have a constitutional right to stay in court?

> THE COURT: Only he has constitutional rights in the courtroom. Nobody else have [*sic*] any constitutional rights in the courtroom, nobody else.
>
> GENTLEMAN IN THE GALLERY: Maybe I watch too much CSI.

***Id***. at 121-22.

Insofar as the court required any members of the public to leave the courtroom, we determine that it acted within the permissible bounds for closing a courtroom. Specifically, the court temporarily limited access while it attempted to facilitate the testimony of a five-year-old sexual abuse victim who was unable to testify under the present circumstances or even look around the courtroom. She readily admitted that she was uncomfortable and was wholly unable to discuss the charges. As explained by the court, it was "trying to make this go as best as we can." ***Id***. at 121. After an off-the-record discussion with counsel, the court found that clearing the courtroom for the remainder of her testimony was the best chance for A.N.O. to be able to testify and for the court to determine her competency. This limited closure did not amount to an abuse of discretion. ***See Wright***, 388 A.2d at 1086 (discerning no error in court's decision to close courtroom where victim had "obvious difficulty" testifying emotionally, and she explained that she was scared because the defendant's family had threatened her).

Based on the foregoing, we affirm Appellant's judgment of sentence.[7]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2024

_____

[7] Prior to filing his brief, Appellant had petitioned this Court to remand the matter to the trial court so that he could be considered for early parole. We deferred disposition of the application to the assigned merits panel. *See Per Curiam* Order, 2/12/24. Appellant did not renew his remand request in his brief and the Commonwealth clarified that Appellant has since been granted parole. *See* Commonwealth's brief at 8 n.6. Notably, there has been no response rebutting the Commonwealth's assertion of mootness. As such, we deny the remand application as moot.